## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**ANGELA E.,**

     **Plaintiff,**

**vs.**                                    **CIVIL ACTION NO. 3:25-CV-00379**

**FRANK BISIGNANO,**
*Commissioner Of Social Security*,

     **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f, respectively. By Order entered June 13, 2025 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Motion for Judgment on the Pleadings along with his Brief in Support of Motion for Judgment on the Pleadings, and the Defendant's (hereinafter "Commissioner") Brief in Support of Defendant's Decision. (ECF Nos. 7, 8, 9)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for remand (ECF No. 8); **GRANT** the Commissioner's request to affirm the final decision (ECF

No. 9); **AFFIRM** the final decision; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

<u>**Procedural History**</u>

The Plaintiff protectively filed her applications for DIB and SSI on May 5, 2022, alleging disability since August 19, 2020[1] due to a torn rotator cuff in the right shoulder, torn meniscus and ACL in the left knee, "plate left foot – rolling tendon", alopecia (hair loss), and extreme swelling in knees (Tr. at 18, 248). Her claims were initially denied on September 20, 2022 (Tr. at 18, 58-65, 66-73) and again upon reconsideration on June 21, 2023 (Tr. at 18, 76-83, 84-91). Thereafter, she filed a written request for hearing on June 30, 2023 (Tr. at 18, 117-118).

An administrative hearing was held on April 30, 2024 before the Honorable Melinda Wells, Administrative Law Judge ("ALJ") (Tr. at 33-55). On July 1, 2024, the ALJ entered an unfavorable decision (Tr. at 15-32). On July 2, 2024, the Plaintiff sought review by the Appeals Council of the ALJ's decision (Tr. at 173-195). The ALJ's decision became the final decision of the Commissioner on April 29, 2025 when the Appeals Council denied the Plaintiff's Request for Review (Tr. at 1-7).

On June 12, 2025, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 6) Subsequently, the Plaintiff filed a Motion for Judgment on the Pleadings along with a Brief in Support of Motion for Judgment on the Pleadings (ECF Nos. 8, 7), in response, the Commissioner filed a Brief in Support of

---

[1] The Plaintiff subsequently amended her alleged onset date to August 1, 2022 (Tr. at 235).

Defendant's Decision (ECF No. 9). Consequently, this matter is fully briefed and ready for resolution.

## Plaintiff's Background

The Plaintiff was 50 years old as of the amended alleged onset date, and therefore considered an "individual closely approaching advanced age" See 20 C.F.R. §§ 404.1563(d), 416.963(d). (Tr. at 24) She has at least a high school education, and has past relevant "composite" work as a waitress, cook helper, kitchen helper, and baker that are characterized as medium to heavy in exertion. (Id.)

## Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant filing for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does,

the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through December 31, 2025. (Tr. at 20, Finding No. 1) At the first inquiry, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since August 1, 2022, the amended alleged onset date. (Id., finding No. 2) At the second inquiry, the ALJ determined the Plaintiff has the following severe impairments: right shoulder rotator cuff tear and degenerative joint disease of the left knee. (Id., Finding No. 3) At the third inquiry, the ALJ concluded that the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 21, Finding No. 4) The ALJ then found that the Plaintiff has the residual functional capacity ("RFC") to perform light work except she

can:

> occasionally crawl; never climb ladders, ropes, or scaffolds; occasionally reach overhead with the right upper extremity, frequently reach in all other directions; avoid more than occasional exposure to extreme cold and vibration; never work at unprotected heights or around dangerous moving machinery.

 (Tr. at 22, Finding No. 5)

At step four, the ALJ found the Plaintiff was incapable of performing past relevant work. (Tr. at 24, Finding No. 6) However, in addition to her age, education, the immateriality of the transferability of job skills, work history, and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (Tr. at 24-25, Finding Nos. 7-10) Finally, the ALJ determined the Plaintiff has not been under a disability since August 1, 2022 through the date of the decision. (Tr. at 26, Finding No. 11)

**<u>Plaintiff's Challenges to the Commissioner's Decision</u>**

The Plaintiff argues that the ALJ erred in a few respects: she failed to fully develop the medical evidence as it relates to the Plaintiff's physical impairments; she failed to consider the combined effect of those impairments, and points to the administrative hearing testimonies as proof that the Plaintiff is unable to perform even light work; and the ALJ substituted her own opinion for the opinions provided by the Plaintiff's treating providers; and/or the ALJ erroneously relied on those opinions provided by non-treating and partial record-reviewing state physicians. (ECF No. 7 at 9-15) The Plaintiff states that the evidence shows that she is disabled, and asks that the final decision be reversed and she be awarded benefits, or alternatively, remand this matter for further proceedings so that her impairments be fully developed and a more accurate hypothetical question be asked of the vocational expert regarding her residual mental and physical functional

capacity. (<u>Id</u>. at 15)

In response, the Commissioner asserts that the ALJ evaluated the entirety of the evidence appropriately, and the Plaintiff merely relies on her self-reported symptoms without identifying any gaps in the evidence the ALJ failed to consider or develop; the Plaintiff's conclusory arguments on this point has been rejected by this Court previously. (ECF No. 9 at 7-9) The Commissioner further contends that the Plaintiff fails to show how she met any specific Listing at step three, only through conclusory statements, and that the ALJ appropriately and explicitly determined that the severity of the Plaintiff's impairments, singly and in combination, did not meet or medically equal Listing criteria. (<u>Id</u>. at 10-13) Additionally, to the extent the Plaintiff argues that the ALJ should have adopted the vocational expert's testimony in response to the Plaintiff's representative's questions or should have included additional limitations in the controlling hypothetical, the Commissioner points out that hypothetical questions need only set forth the Plaintiff's credibly established limitations, which are supported by the substantial evidence. (<u>Id</u>. at 12-13) The Commissioner also argues that the Plaintiff relies on outdated standards for evaluating opinion evidence, that the ALJ appropriately evaluated same, that none of the Plaintiff's providers provided opinion evidence, notwithstanding the Plaintiff's contention otherwise, and that the Plaintiff relies on evidence predating the relevant period. (<u>Id</u>. at 13-16). Finally, the Commissioner states that the final decision is supported by substantial evidence and asks this Court to affirm. (<u>Id</u>. at 17)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record pertaining to the Plaintiff's arguments and discusses it below.

Summary of Relevant Medical Evidence:

The ALJ noted that in June 2021 and June 2022, the Plaintiff underwent rotator cuff repair surgeries (Tr. at 23, 1091, 1137). Physical examination results showed that the Plaintiff exhibited no extremity deformity, normal motor strength and normal range of motion of both shoulders, and intact sensation of both shoulders (Tr. at 23, 1050, 1091, 1122). However, the ALJ also acknowledged that the Plaintiff's examining providers noted occasions where the Plaintiff exhibited knee pain and effusion, right shoulder pain and weakness and joint pain (Tr. at 23, 894, 1003, 1010, 1083); the Plaintiff was prescribed medication to treat her symptoms (Tr. at 23, 897, 1005, 1040, 1137). It was noted that the Plaintiff's therapy records showed in August 2022 that she reported mild soreness in her right shoulder (Tr. at 23, 1003).

The ALJ observed the medical record contains no evidence of chronic edema or the need for a cane for ambulation (Tr. at 23). Further, the ALJ noted that November 2022 records show that the Plaintiff exhibited no synovitis in the hand joints, wrists, elbows, knees, or ankles and that she exhibited good passive range of motion of the elbows, wrists, knees, and ankles as well as a normal gait (Tr. at 23, 1083). December 2022 physical therapy records showed the Plaintiff was able to reach overhead and flex both shoulders without difficulty and only experienced mild

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. As an additional matter, the undersigned observes that the majority of the medical evidence referenced by the Plaintiff in her brief predate the amended alleged onset date.

difficulty reaching behind her back (Tr. at 23, 1093). The Plaintiff reported that her strength was improving and during a subsequent visit was encouraged to continue physical therapy (Tr. at 23, 1122-1123). In February 2023, physical therapy records showed that the Plaintiff could reach overhead without difficulty and experienced no more than mild pain with range of motion, although there still existed some reduced range of motion with right shoulder flexion (Tr. at 23, 1122).

<u>Opinion Evidence and Prior Administrative Findings:</u>

In September 2022, state agency physician Uma Reddy, M.D., reviewed the record and found the Plaintiff could perform light work with occasional postural activities but must avoid concentrated exposure to extreme cold, vibration, and hazards (Tr. at 62-63). In support of her findings, Dr. Reddy noted the Plaintiff's right shoulder pain improved following two surgeries and physical therapy, her knee pain improved following meniscus surgery, she took pain medication as needed, and she performed light work at home (Tr. at 63).

State agency physician Palle Reddy, M.D., independently reviewed the updated record in June 2023 and found the Plaintiff could perform light work with occasional postural activities, frequent reaching in the front and overhead, and she must avoid concentrated exposure to extreme cold, vibration, and hazards (Tr. at 79-81). In support of his findings, Dr. Reddy noted the Plaintiff's right shoulder pain improved following two surgeries and physical therapy, her knee pain improved following meniscus surgery, she took pain medication as needed, and she performed light work at home (Tr. at 81).

The ALJ determined both opinions were persuasive, given their support from the medical findings of record, and consistency with the medical evidence (Tr. at 24, 58-65, 66-73, 76-83, 84-

91, 1050, 1091, 1122).

The ALJ determined that the restrictions opined by the Plaintiff's provider "are temporary" and did not provide articulation as to whether this evidence was valuable or persuasive in accordance with 20 C.F.R. §§ 404.1520b(c), 416.920b(c) (Tr. at 24, 1221-1222).[3]

**The Administrative Hearing**

Plaintiff's Testimony:

The Plaintiff testified that she has a driver's license, and does drive, but "not a lot" (Tr. at 37). She stated that her knees and shoulder prevent her from working, and that she has a metal plate in her left foot (Tr. at 40). She said that both her knees hurt her every day, that she can't stand for very long, because her foot starts swelling (Tr. at 40-41). To alleviate her knee pain, the Plaintiff testified that she elevates them, and puts on ice them two or three times a day (Tr. at 41). She also has daily shoulder pain with weakness, that prevents her from blow drying her hair; she uses ice and medication, but she isn't sure it helps, but thinks it would be worse if she didn't take this medication (Id.). Her left foot hurts every day, especially if she has to walk a lot; she elevates it to help with the pain, and sits down for a bit to take the pressure off (Id.). She takes ibuprofen and vitamins (Id. at 41-42). Side effects from medication is "just upset stomach." (Tr. at 42)

The Plaintiff testified she had not had injections for pain, but did have physical therapy, but it did not help with the pain; physical therapy did help with her range of motion, though she is unable to fasten her bra (Tr. at 42, 43). She uses knee braces, and that they helped (Tr. at 42-43).

---

[3] This record concerns return to work forms dated September 24, 2020 and October 8, 2020 which indicated the Plaintiff could return to light duty, lift no greater than five pounds with the right upper extremity, and to not use her right arm while continuing with physical therapy and medication.

After her shoulder surgery, she used a TENS unit, but it did not help with her pain (Tr. at 43). The Plaintiff testified to having a mass removed from her tailbone recently in October (Tr. at 42). She estimated that she could stand for about ten or fifteen minutes; sit for fifteen or twenty minutes; and lift about a gallon of milk (Tr. at 43-44, 46).

In terms of using her arm, she stated that she can reach "some", but as far as fixing her hair, she is unable to use it long enough for that (Tr. at 44). While she has "trouble sometimes" showering, she uses a shower seat because of her knees and foot, and it takes a "little bit longer than what it used to." (Id.)

She does light chores around the house, like dusting and some laundry, and uses a dishwasher; her mother comes over to run the sweeper (Tr. at 45). She does not go grocery shopping, but has it delivered because it's easier, and she uses the microwave a lot (Id.). She used to have hobbies, but now usually just sits a home, and goes to her mother's or her son's homes (Id.).

The Plaintiff explained that she had a bunionectomy in 2019 and that a plate with screws was put it to hold the tendon in place; it stays sore and prolonged walking or standing causes her pain (Tr. at 46-47). Also, the Plaintiff testified that she had a meniscus and ACL transplant that made her left leg weaker in terms of standing and walking (Tr. at 47). She testified that when she walks or stands for very long, her knees swell, and she had to have 60 millimeters of flued aspirated from her right knee in April 2022; she has a cane, which helps take the pressure off, but she is "not very coordinated." (Tr. at 48) She endorsed falling, even when using the cane (Tr. at 48-49). She testified that she has problems sleeping due to her pain (Tr. at 49). She usually sits all day with her legs elevated unless she has to do anything (Tr. at 50).

10

<u>Vocational Expert's Testimony:</u>

The vocational expert testified that the Plaintiff's past relevant work is classified as medium to heavy in exertion, being composite jobs (Tr. at 51-52). Under the controlling RFC, *supra*, the vocational expert opined that a hypothetical with the Plaintiff's profile would be unable to perform the Plaintiff's past relevant work, but can perform other light jobs in the national economy: marker; cashier II; and router (Tr. at 52-53). The vocational expert stated that should the individual need to elevate the legs at waist level throughout the workday, all jobs would be precluded (Tr. at 53).

In response to questioning by the Plaintiff's attorney, the vocational expert opined that if the hypothetical individual were limited to lifting up to eight pounds with the dominant extremity or both hands, all light jobs would be precluded, but if the individual could lift up to eight pounds with one hand, but lift more with the other, the individual may be able to do light jobs (Tr. at 54). If the individual were limited to walking and standing twenty to twenty-five minutes at a time, or ten to fifteen minutes and would have to sit down and take a break a couple of time on the hour of about five minutes each time, then all light work would be precluded (<u>Id</u>.).

## **Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claims is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As noted *supra*, the Plaintiff argues that the ALJ failed in her duty to develop the record with respect to the Plaintiff's physical impairments, failed to consider the combined effect of her impairments; and also failed to consider the medical records provided by her treating physicians and substituted her opinion for those of the Plaintiff's treating physicians. (ECF No. 7 at 7-15)

The Duty to Develop the Evidence:

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. The court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's

12

arthritis claim in order to determine if it met the requirements in the listings of impairments amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is the Plaintiff's responsibility to prove to the Commissioner that he is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled." Thus, the Plaintiff is responsible for providing medical evidence to the Commissioner showing that he has an impairment, further, the Regulations are clear that this responsibility is ongoing at each level of the administrative review process. Id. The Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as the Plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-831 (8th Cir. 1994). In this case, the Plaintiff was represented by counsel and the ALJ has the right to assume that his counsel was presenting the strongest case for benefits. See Laney v. Astrue, 2011 WL 11889, at *11 (S.D.W. Va. Jan. 4, 2011) (Eifert, M.J.) (citing Nichols v. Astrue, 2009 WL 2512417, at *4 (7th Cir. 2009). An ALJ's duty to develop the record does not require him to make specific inquiries into the

Plaintiff's treatment modalities or search for cumulative evidence; his duty is to obtain sufficient evidence upon which he can render an informed decision. Id. (internal citations omitted).

The Plaintiff bears the burden of establishing a *prima facie* entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, the Plaintiff "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

With respect to the Plaintiff's assertion that the ALJ failed to develop the evidence concerning her impairments, it is noted that the Plaintiff neither specifies what evidence was inadequately fleshed out by the ALJ, nor what evidence specifically supports her argument that she is disabled. As pointed out by the Commissioner (ECF No. 9 at 8), the Plaintiff's counsel affirmed that he had no objections to the exhibits in the record, and confirmed that the record was complete (Tr. at 36; see also Tr. at 18). Additionally, this Court has repeatedly rejected such arguments:

> [Plaintiff] does not identify any gaps in the record or further evidence that the ALJ should have developed. []He cites a legal standard and does not articulate how it applies to h[is] case. [Plaintiff's] conclusory assertion that the ALJ failed to develop the record does not assert a viable challenge to the Commissioner's decision. Indeed, the Court should not be tasked with researching and constructing [Plaintiff's] arguments for h[im]. [Plaintiff] fails to specify any deficiencies in the record . . . [Plaintiff] does not identify any further inquiries that the ALJ should have made or indicate what further evidence was necessary for the ALJ to render a decision on h[is] disability applications. [Plaintiff] lists pieces of medical evidence in h[is] brief, yet []he does not explain how any of it prompted further investigation.

*Hensley v. Kijakazi*, No. 3:21-CV-00178, 2021 WL 5871542, at *13-14 (S.D. W. Va. Nov. 23, 2021), *report and recommendation adopted*, No. 3:21-cv-00178, 2021 WL 5867126 (S.D. W.

Va. Dec. 10, 2021); *see also Jason L. v. O'Malley*, No. 3:23-cv-00307, 2024 WL 1152405, at *11 (S.D. W. Va. Feb. 29, 2024), *report and recommendation adopted*, No. 3:23-cv-00307, 2024 WL 1149282 (S.D. W. Va. Mar. 15, 2024) (quoting *Hensley*); see also, *Ray H. v. Dudek*, No. 3:24-cv-00705, 2025 WL 1214556, at *9 (S.D.W. Va. Apr. 9, 2025), *report and recommendation adopted sub nom.*, 2025 WL 1210703 (S.D.W. Va. Apr. 25, 2025).

The undersigned also notes that this Circuit has long recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)); see also *Call v. Berryhill*, No. 2:17-cv-02292, 2018 WL 4659342, *4 (S.D.W. Va. Sept. 28, 2018). To the extent that the Plaintiff complains that the ALJ may not have specifically mentioned each of her alleged impairments[4], she stated that she considered all the evidence of record. (See Tr. at 19 ("After careful consideration of all the evidence. . ."); Tr. at 20, 22 ("After careful consideration of the entire record. . ."). Having so stated, this court should "take her at her word." Reid, 769 F.3d at 865 ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word."); see also Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."); Christina W. v. Saul, No. 4:19-cv-00028-PK, 2019 WL 6344269, *4 (D. Utah Nov. 27, 2019)("Plaintiff further

---

[4] Though the Plaintiff does not identify or specify any one impairment that the ALJ failed to mention or consider, it appears that the ALJ took great pains to mention each of the Plaintiff's alleged impairments and considered the symptoms related thereto and how they affected the Plaintiff's overall functioning in her review of the medical and other evidence of record in both the RFC assessment, and at prior steps in the sequential evaluation process.

argues that the ALJ erred in not explicitly discussing various pieces of evidence, particularly the fact that she is participating in a structured treatment program. While the ALJ must consider all the evidence, she need not recite each piece of evidence she has considered. The ALJ stated that she carefully considered the entire record and the Court can take her at her word."). Moreover, despite the Plaintiff's listing the various diagnoses and symptoms related thereto in her brief, this is not the litmus test for disability, as it is also well known that diagnoses alone do not establish disability, because there must be a showing of related functional loss. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (*per curiam*) (internal citations omitted).

Nevertheless, despite the Plaintiff's assertion otherwise, the ALJ considered the medical evidence (and opinions) from the treating and examining sources of record. In addition, the ALJ also expressly considered the Plaintiff's and the vocational expert's testimonies (see, e.g., Tr. at 18, 22, 24, 25). As mentioned *supra*, when asked by the ALJ at the beginning of the hearing if there was a complete record in this case, the Plaintiff's attorney responded in the affirmative. (Tr. at 36; see also, Tr. at 18 ("The claimant submitted or informed the [ALJ] about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 404.935(a) and 416.1435(a))." In short, the Plaintiff has failed to demonstrate any paucity in the evidence that would have warranted further development of the record.

Accordingly, the undersigned **FINDS** that the Plaintiff's contention that the ALJ erred by failing to develop the record is without merit.

Consideration of the Combined Effect of Impairments:

The Regulations provide:

In determining whether your physical or mental impairment or impairments are of

16

a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

See 20 C.F.R. §§ 404.1523(c), 416.923(c). When confronted with a combination of impairments, an adjudicator must not only acknowledge "the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The Fourth Circuit has held that the ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. In short, the ALJ must analyze the cumulative or synergistic effect that the various impairments have on the Plaintiff's ability to work. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

"The Listing of Impairments . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." See 20 C.F.R. §§ 404.1525(a), 416.925(a); Sullivan v. Zebley, 493 U.S. 521, 532 (1990). To qualify for benefits, the Plaintiff must show that his combination of impairments is "equivalent" to a listed impairment, and he "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." See Id. at 531. A claimant must meet all, not just some, of the criteria for a listing to apply. Id. at 530.

In a conclusory fashion, the Plaintiff appears to suggest that the medical evidence from her treating providers confirms that the combined effect of her impairments renders her totally

disabled. (ECF No. 7 at 9) Again, as pointed out by the Commissioner, the Plaintiff does not specify which impairment would individually warrant a disability finding, instead, she merely states that the ALJ failed to develop the medical evidence of her treating doctors (Id.), and leans heavily on her administrative hearing testimony, and that of the vocational expert (Id. at 9-14). Again, this Court has rejected such arguments previously. See, *Adkins v. Colvin*, No. 3:14-cv-27920, 2016 WL 854106, at *9 (S.D. W. Va. Feb. 11, 2016), *report and recommendation adopted by* 2016 WL 868342 (S.D. W. Va. Mar. 4, 2016) (affirming where the claimant failed to identify the listing he allegedly met in combination); *Raines v. Kijakazi*, No. 3:21-cv-0045, 2021 WL 4258733, at *12 (S.D. W. Va. Aug. 27, 2021), *report and recommendation adopted by* 2021 WL 4255625 (S.D. W. Va. Sept. 17, 2021) (affirming where the claimant did not specify what evidence was "inadequately fleshed out" in evaluating her impairments in combination, nor what evidence "specifically supports" *per se* disability); *Ray H.*, 2025 WL 1214556, at *11-13; *Jason L.*, 2024 WL 1152405, at *13-14 (rejecting the same argument regarding the Listing of Impairments).

As noted *supra*, at step three, the ALJ found that none of the Plaintiff's severe impairments, even their combined effects, met Listing requirements at the third step of the sequential evaluation process, and cited to the relevant evidence of record in support of this finding, summarized above: the ALJ here addressed the relevant listing, Listing 1.18, for abnormality of a major joint(s) in any extremity (Tr. at 21-22). This Court has recognized that an adjudicator properly considers impairments in combination where she discusses each impairment separately and finds that the claimant's impairments, when considered together, did not prevent her from performing work activity. See, e.g., *Wiseman v. Colvin*, No. 3:14-cv-28750, 2015 WL 9075457, at *19 (S.D.W. Va. Nov. 24, 2015), *report and recommendation adopted*, 2015 WL 9008899, at *1 (S.D.W. Va.

Dec. 15, 2015); see also, *Adkins*, 2016 WL 854106, at *9 (finding substantial evidence supported the ALJ's decision where the ALJ considered the claimant's impairments in the listings analysis and in rendering the RFC); *Parker v. Astrue*, No. 6:07-cv-00472, 2008 WL 2405026, at *3 (S.D. W. Va. June 11, 2008) (holding that the ALJ adequately considered the combined effect of the plaintiff's impairments through a thorough RFC assessment and severity analysis).

In support of her argument that the ALJ failed to consider the combined effects of her impairments, the Plaintiff merely summarizes her testimony, including her description of her prior employment, her subjective allegations of disabling pain and resulting limitations, and her medical treatment (ECF No. 7 at 9-13). She then summarizes the vocational expert's testimony regarding the nature of her prior employment and her response to the hypothetical questions presented by the ALJ (Id.). The Plaintiff appears to argue that the ALJ should have adopted the vocational expert's responses to her representatives questions, which included limitations to standing and walking for twenty to twenty-five minutes at a time and taking several breaks each hour, which supports a finding that the Plaintiff's limitations preclude all employment (Id.). The Plaintiff's argument fails: this Circuit has long held that a hypothetical question need only reflect those limitations that are supported by the record. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The ALJ is not required to submit every limitation *alleged* by the claimant to the vocational expert – she is only required to include those based on credibly established limitations supported by the record. Id.; see also, Koonce v. Apfel, 166 F.3d 1209 (4th Cir. 1999) (stating that an ALJ has "great latitude in posing hypothetical questions" and need only include limitations supported by substantial evidence in the record).

To the extent that the Plaintiff takes issue with the ALJ's evaluation of her subjective

complaints, it is noted that recently the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. Essentially, the Fourth Circuit has once again cautioned against an ALJ's analysis must not primarily rely upon the lack of objective medical evidence as the reason for discounting a claimant's complaints. As demonstrated by the foregoing, this did not occur here: the ALJ did not select only those portions from the objective medical evidence that failed to support the Plaintiff's allegations of disabling impairments. The ALJ also examined both aggravating and mitigating factors with respect to the Plaintiff's subjective complaints which included his testimony, his reports to providers, the objective medical evidence, as well as the opinion evidence. The law does not require one to be pain-free or experience no discomfort in order to be found not disabled. Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1996). In this case, the ALJ provided a thorough and adequate analysis of the Plaintiff's

subjective complaints that complied with the pertinent Regulations and case law – it is notable that the gravitas behind the ALJ's evaluation of the Plaintiff's subjective complaints was not over-reliance on the objective medical record, but with the Plaintiff's own inconsistent statements. (See, e.g., Tr. at 21, 1083; "[The Plaintiff's] allegations of left foot pain are not clinically correlated as November 21st records further state the claimant exhibited good passive range of motion . . . as well as a normal gait (Exhibit 22F, 20). Accordingly, there were no medical signs or laboratory results to substantiate the existence of medically determinable impairments related to the claimant's allegations.")

The ALJ considered the medical evidence as well as the Plaintiff's reported symptomology from the relevant period. As discussed *supra*, the ALJ did consider this evidence in making her third step determination (as well as the second step determination and in the subsequent steps in the sequential evaluation process), thus, to the extent that the Plaintiff argues that the ALJ failed to consider and evaluate the combined effects of her impairments, the undersigned **FINDS** this argument lacks merit. Additionally, the undersigned **FINDS** that the ALJ's subjective symptoms analysis complied with the pertinent Regulations and controlling case law and is based upon substantial evidence. The undersigned further **FINDS** the ALJ's discussion of the objective and other evidence of record in his evaluation of the Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms, and that the ALJ's conclusion that the Plaintiff's statements were inconsistent with the evidence of record complied with the applicable law, is also supported by substantial evidence.

Evaluation of Opinion Evidence:

The Plaintiff argues that the ALJ impermissibly substituted her own opinion for those of her treating physicians. However, the undersigned observes that with the exception of the "Accident Report/Return to Work" forms provided in September 2020 and October of 2020, which not only predate the Plaintiff's amended alleged onset date, but also, the ALJ explicitly discussed these "opinions", *supra*. Further, the Plaintiff fails to specify, let alone identify, the physicians that supposedly provided opinion evidence in this matter – however, significantly, the undersigned observes the record shows none. Indeed, while only proffering a conclusory statement that the ALJ "failed to consider" the medical records of her treating physicians[5], the undersigned **FINDS** this argument wholly without merit: throughout the written decision, the ALJ made repeated citations to the medical records of the Plaintiff's longtime treating providers (Tr. at 21-23). Moreover, the Plaintiff does not identify any medical records the ALJ failed to consider, but merely names random providers.[6] While the ALJ did not specifically identify the *names* of the individual providers in her discussion of the evidence, it is clear that she did consider this evidence, as summarized *supra*. As for the Plaintiff's argument that the ALJ "substituted" her own opinion for those of her treating physicians, the undersigned **FINDS** this argument completely baseless for the aforementioned reasons, as there is not a "medical opinion" in evidence as defined under 20 C.F.R.

---

[5] The Plaintiff names the following providers: Dr. Stanley Tao; Dr. Jarrod Smith, M.D.,; Dr. Eugenia Jarell, M.D.; Dr. Ralph Webb, M.D.; and Dr. Farzad Amiri, M.D. (ECF No. 7 at 15)

[6] This Court has recognized that  the broad reference to nearly the entire medical record without asserting any specific challenge to the ALJ's consideration of the evidence does not carry any weight on appeal. See, e.g., *Williams v. Saul*, No. 3:18-cv-01282, 2019 WL 3756392, at *13 (S.D.W. Va. July 17, 2019), *report and recommendation adopted*, 2019 WL 3759805 (S.D.W. Va. Aug. 7, 2019) ("Claimant does not identify any error in the ALJ's consideration of the medical opinions, and her generalization that the ALJ failed to consider the opinions, without any reference to any specific error by the ALJ, fails to carry any weight.").

§§ 404.1513(a)(2), 416.913(a)(2). Additionally, the Plaintiff offers nothing in support of her argument that the ALJ "substituted" her own opinion, let alone identify what that may have been, save for a conclusory statement.

In any event, the Plaintiff cites to an outdated standard for evaluating opinion evidence – had any of her providers submitted an actual opinion for the ALJ to evaluate, she was under no obligation to give it "controlling weight if well-supported and consistent with the record" (See ECF No. 7 at 14). In the written decision, the ALJ explicitly applied the regulatory framework pursuant to Sections 404.1520c(a) and 416.920c(a) to claims filed after March 27, 2017: "[a]s for medical opinion(s) and prior administrative medical finding(s), we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), *including those from medical sources*." (Tr. at 24) (*emphasis* added) Here, the ALJ properly applied the pertinent Regulations, which emphasize the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record. As noted within the decision, the ALJ now just considers the persuasiveness of a medical opinion (or a prior administrative medical finding). Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(b) 416.920c(b). When discussing his finding about whether an opinion is persuasive, the ALJ need only explain how he considered the "the most important factors" of supportability and consistency. Id. §§ 404.1520c(c), 416.920c(c). The ALJ "may" comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. Id. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

As discussed above, the ALJ herein explicitly applied Sections 404.1520b(c) and

416.920b(c) relieving her of the burden to provide any articulation about certain evidence – the "Accident Report/Return to Work" forms provided in September 2020 and October of 2020 – that is inherently neither valuable nor persuasive (Tr. at 24, 1221-1222). The ALJ also appropriately evaluated the opinion evidence from the State agency consultants in compliance with the aforesaid regulatory standards explaining what evidence from the record supported the opinions, and how they were consistent with the evidence (Tr. at 24, 58-65, 66-73, 76-83, 84-91, 1050, 1091, 1122).

The Regulations and pertinent case law support not only the ALJ's observations, but also, an RFC assessment lies squarely with the ALJ, not with any medical provider/examiner. 20 C.F.R. §§ 404.1546(c), 416.946(c); see Felton-Miller v. Astrue, 459 Fed. App'x 226, 230-31 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). Further, to the extent the Plaintiff contends the ALJ should have adopted her treating sources' findings that she was essentially disabled, the Regulations expressly provide that the Commissioner is the final arbiter on such issues, and is under no obligation to give any special significance to the source for issues reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2), (d)(3), 416.927(d)(2), (d)(3).

Although the Plaintiff advocates for a different outcome, such are matters that involve resolving the conflicting evidence of record, which is an evidentiary finding within the purview of the ALJ. In short, though the Plaintiff may disagree with the ALJ's determination that she is not disabled, this Court cannot re-weigh this conflicting evidence or substitute its judgment for the Commissioner's. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also, SSR 96-8p, 1996 WL 3741784, at *7. The ALJ's narrative of the record included the objective medical evidence, including imaging, and clinical examination findings, as well as the other evidence of record,

including but not limited to the Plaintiff's own statements and testimony; the ALJ's thorough discussion of all this evidence, and her ultimate determination that the Plaintiff remained capable of light work with certain restrictions during the period at issue despite her subjective complaints, provided sufficient explanation allowing for meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). This Court is not "left to guess about how the ALJ arrived at his conclusions" therefore remand is not necessary. Id. at 637.

Accordingly, the undersigned **FINDS** that the Commissioner's final decision determining that the Plaintiff is not disabled from August 1, 2022 through the date of the decision is supported by substantial evidence.

## **Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8), **GRANT** the Commissioner's request to affirm the decision below (ECF No. 9), **AFFIRM** the final decision, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is

made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: October 16, 2025.



Omar J. Aboulhosn
United States Magistrate Judge